# 18-105-cr

---

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

-v-

STACEY J. LaPORTE, JR.,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of New York

---

**Brief for Defendant-Appellant
Stacey J. LaPorte, Jr.**

---

Lisa A. Peebles                  Federal Public Defender's Office
Federal Public Defender          4 Clinton Square, 3rd Floor
James P. Egan                    Syracuse, New York 13202
Assistant Federal Public Defender  315.701.0080

# Table of Contents

Table of Authorities ...................................................................... iii

Jurisdictional Statement ............................................................... 1

Statement of the Issue Presented ................................................. 1

Statement of the Case ................................................................... 2

    I.     Introduction ......................................................... 3

    II.    Indictment ........................................................... 4

    III.   Pretrial ................................................................. 6

    IV.   Trial ...................................................................... 7

    V.    Sentencing ............................................................ 9

Summary of the Argument ......................................................... 10

Argument ..................................................................................... 11

   The district court erred in denying LaPorte's suppression motion without a hearing

I.    Standard of Review ............................................................ 11

II.   Legal Background .............................................................. 12

III.  Discussion ........................................................................... 16

   A.  LaPorte proffered facts and arguments that, if credited, would have precluded the government from introducing the statement at trial. ......................................................................................... 16

   B.  The district court abused its discretion in denying LaPorte's motion without a hearing ........................................................ 19

C.  This court should remand the case to the district court to conduct an evidentiary hearing. ........................................................................... 26

Conclusion ................................................................................................. 28

Certificate of Compliance ......................................................................... 30

Certificate of Service ................................................................................ 31

# Table of Authorities

## Cases

*Campaneria v. Reid*, 891 F.2d 1014 (2d Cir. 1989) ............................... 14

*Chapman v. California*, 386 U.S. 18 (1967) ........................................... 30

*Dickerson v. United States*, 530 U.S. 428 (2000) ............................. 13, 14

*Fare v. Michael C.*, 442 U.S. 707 (1979) ................................................ 15

*Jackson v. Denno*, 378 U.S. 368 (1964) .................................................. 16

*Green v. Scully*, 850 F.2d 894 (2d Cir. 1988) ......................................... 14

*Rogers v. Richmond*, 365 U.S. 534 (1961) .............................................. 13

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ................................... 19

*United States v. Anderson*, 929 F.2d 96 (2d Cir. 1991) ..................... 20, 25

*United States v. Finley*, 245 F.3d 199 (2d Cir. 2001) ............................. 11

*United States v. Jaswal*, 47 F.3d 539 (2d Cir. 1995) ....................... 15, 19

*United States v. Jelks*, 53 Fed.Appx. 601 (2d Cir. 2003) ...................... 29

*United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998) ............... *passim*

*United States v. Nelson*, 193 Fed.Appx. 47 (2d Cir. 2006) ................... 29

*United States v. Pena*, 961 F.2d 333 (2d Cir. 1992) ............................. 16

*United States v. Taylor*, 745 F.3d 15 (2d Cir. 2014) ............................. 19

## Statutes

18 U.S.C. § 2251 ........................................................................ 1, 2, 5, 6

18 U.S.C. § 2252A ..................................................................... 1, 2, 5, 6

18 U.S.C. § 3231 ..................................................................................... 1

18 U.S.C. § 3501 ................................................................................... 16

18 U.S.C. § 3742 ..................................................................................... 1

## Other

Wayne R. LaFave et al., 2 Crim. Proc. § 6.2(c) (4th ed.)........................ 13

U.S. CONST. amend V ........................................................................... 13

## Jurisdictional Statement

This appeal is taken from a judgment of conviction entered against the Defendant-Appellant Stacey J. LaPorte, Jr., on January 10, 2018 in the United States District Court for the Northern District of New York by the Honorable David N. Hurd.  A 247.[1]  The district court had subject matter jurisdiction, pursuant to 18 U.S.C. § 3231, because this was a criminal case alleging violations of 18 U.S.C. §§ 2251, 2252A.  A 46. Jurisdiction in this appeal is invoked in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  A notice of appeal was timely filed on January 12, 2018.  A 254.

## Statement of the Issue Presented

Whether the District Court erred in denying Stacey LaPorte's suppression motion without a hearing when LaPorte proffered a specific and detailed basis to conclude that the statement attributed to him and any waiver of his *Miranda* warnings were involuntary.

---

[1] Citations to the Appendix ("A") are to the page numbers inserted therein.

1

## Statement of the Case

Stacey LaPorte appeals from a judgment of the Northern District of New York imposed by the Honorable David N. Hurd, United States District Judge. A 247. The Office of the Federal Public Defender was continued by this Court as counsel to LaPorte on this appeal pursuant to the Criminal Justice Act.

On April 20, 2017, a federal grand jury returned a six-count second superseding indictment against LaPorte and co-defendant Mackenzie Bailey. A 46. Count One charged LaPorte and Bailey with engaging in a conspiracy to sexually exploit a child in violation of 18 U.S.C. § 2251(a) & (e). Count Two charged LaPorte with engaging in a conspiracy with Hillary Trimm to sexually exploit a child in violation of 18 U.S.C. § 2251(a) & (e). Counts Three and Four charged LaPorte and Bailey with sexual exploitation of a child in violation of 18 U.S.C. §§ 2(a) and 2251(a) & (e). Count Five charged LaPorte with sexual exploitation of two children in violation 18 U.S.C. § 2251(a) & (e). Count Six charged him with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A).

Following the denial of a motion to suppress statements, LaPorte proceeded to a jury trial and was convicted of all six counts charged.

The district court then sentenced LaPorte to a combined 95 years in prison and lifetime supervised release. A 247.

## I.    Introduction

During the course of an investigation beginning in 2016, law enforcement officers discovered Kik Messenger (Kik) communications used to produce and receive child pornography. More particularly, officers learned that (1) a person using a certain username was communicating with several other Kik users in an attempt to convince them to engage in illicit sexually explicit conduct, record the conduct, and then share the produced images, and (2) a person using a separate Kik account had communicated with an unknown person to receive two images of unrelated child pornography. Ultimately, officers learned the identity of the individuals engaging in the production conduct and each one claimed to have been directed to do so by LaPorte. A search of a cell phone after LaPorte's arrest uncovered evidence indicating LaPorte's suspected receipt of separate child pornography images. While the government obtained and presented at trial considerable evidence

3

tending to indicate that LaPorte was responsible for using Kik to produce and receive child pornography, LaPorte, who was not depicted in any illicit image, flatly denied responsibility. LaPorte believed that the communications in question were sent by his girlfriends.

## II.   Indictment

On April 20, 2017, a federal grand jury returned a six-count indictment charging LaPorte with various sex offenses. A 46.

Count One charged LaPorte and Mackenzie Bailey with engaging in a conspiracy from 2014 to May 2016 to use AT, a child born in 2014, to engage in sexually explicit conduct for the purpose of producing child pornography. A 46. AT was the child of Bailey, who was LaPorte's girlfriend during much (if not all) of the alleged conspiracy. A 56. According to the government, Bailey agreed to perform sexual acts on AT at LaPorte's request and send images of that conduct to LaPorte through Kik. A 65.

Certain of these Kik messages and accompanying images were the subject of Counts Three and Four, which charged both LaPorte and Bailey with substantive acts of producing child pornography in violation of 18 U.S.C. §§ 2251(a) & (e) and 2. A 67-69.

4

Prior to LaPorte's trial, Bailey pled guilty to all three counts with which she was charged and was later sentenced to 15 years' imprisonment.  A 55.[2]

Count Two charged a similar conspiracy between LaPorte and Hillary Trimm.  A 47.  As with the conspiracy charged in Count One, Count Two was based on an allegation that LaPorte directed Trimm to engage her daughter, CT, who was born in 2014, in sexually explicit conduct, photograph the conduct, and send images to him through Kik.  A 61.  However, the government had neither the chats nor the images allegedly produced by Trimm.  A 62.  Trimm also pled guilty prior to LaPorte's trial and was subsequently sentenced to 90 months' imprisonment.[3]

---

[2] Bailey pled guilty under the first indictment, which, at least with respect to her, charged the same offenses as the second superseding indictment underlying LaPorte's convictions, even though they constituted different numbered counts of the respective indictments.

[3] The government charged Trimm with this conspiracy in a separate criminal information.  *See United States v. Hillary Trimm*, 17-cr-90-DNH (N.D.N.Y.).  The government's appeal of her 90-month sentence in that case is currently pending in this Court.  *See United States v. Hillary Trimm*, 18-702-cr (2d Cir.).

Count Five charged LaPorte alone with using two children, CF, a girl born in 1999, and her brother, JS, born in 2003, to engage in sexually explicit conduct for the purpose of producing child pornography in violation of 18 U.S.C. § 2251(a) & (e). A 48. As with the other counts, the government alleged LaPorte directed CF to engage JS in sexual conduct, take a picture, and send it to him through Kik. A 66.

Count Six charged LaPorte alone with receiving child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A). A 48-49. According to the government, LaPorte used Kik to communicate with another Kik user, who provided two unrelated images of child pornography to LaPorte. A 69-70.

## III.  Pretrial

LaPorte made several motions prior to trial. A 29. As relevant here, he argued that the district court should suppress statements attributed to him because both the statement and any *Miranda* waiver were involuntary. A 38-41. After the government opposed the factual contentions underlying the suppression motion, LaPorte argued that the district court should hold an evidentiary hearing to resolve the following factual disputes: (1) whether LaPorte voluntarily accompanied the police

to the station for questioning; (2) whether LaPorte was properly *Mirandized* before the investigator began the interrogation; (3) whether LaPorte's consumption of alcohol and marijuana prior to the interrogation rendered his statement and any *Miranda* waiver unknowing and involuntary; and (4) whether the police used other coercive tactics to induce LaPorte's alleged confession and any *Miranda* waiver. A 111, 114-15.

The district court denied each of LaPorte's pretrial hearings and, as relevant here, denied his suppression motion without an evidentiary hearing, concluding that LaPorte failed to raise a credible, definite, specific, and detailed allegation bearing on the voluntariness of his statement and, thus, there was no factual dispute necessitating a hearing. A 137, 141.

## IV. Trial

The district court held a six-day jury trial beginning on June 12 and concluding on June 20, 2017. The government's case focused on certain Kik communications and accompanying images recovered from several

digital media,[4] along with the testimony of most of those depicted in the recovered images.[5]  LaPorte did not (and still does not) dispute that the government's evidence establishes that someone committed several sex offenses.  Instead, LaPorte contended (and still does) that the charged offenses were not committed by him.

In an attempt to rebut that defense, the government relied on several pieces of evidence.  First, both Bailey and Trimm, the women alleged to have conspired with LaPorte to produce child pornography, testified about (a) certain statements LaPorte made about his attraction to children, (b) LaPorte's sexual abuse of the covered children at separate times, and (c) after creating and sending the images in question, each brought her respective child into a separate room in the house where LaPorte engaged the respective child in illicit sexual conduct.  A 62, 188, 191, 194, 202.  Second, LaPorte's younger sister, BL, testified that LaPorte engaged her in illicit sexual conduct on several occasions and at several locations beginning when she was eight years old and ending

---

[4] The offending Kik communications are adequately summarized in the PSR and need not be repeated here.  *See* PSR ¶¶ 52-53, 56-58.

[5] AT and CT, the children covered by Counts One through Four, did not testify.

when she was a teenager. A 202-03. Third, the challenged statement attributed to LaPorte in which he allegedly confessed to committing various illicit sexually abusive acts against BL. A 99, 192, 202-04, 240. Fourth, certain details in both the offending and otherwise innocent Kik communications with Bailey. A 193-94. Fifth, LaPorte's apparent interest in a certain film franchise bearing a similarity in name to the Kik account used in connection with the charged production offenses. A 195-98. Finally, images of child pornography charged in Count Six as well as certain communications found on a phone the government argued belonged to LaPorte. A 204-09.

## V.    Sentencing

The Probation Office prepared a Presentence Report (PSR) in anticipation of sentencing.[6] Although LaPorte's Total Offense Level was determined to be 57 after application of several specific offense characteristics and adjustments, the offense level was treated as level 43. PSR ¶¶ 67-139, and his Criminal History Category was I. PSR ¶ 146. Accordingly, the PSR calculated a guideline range of life imprisonment,

---

[6] The Presentence Report (PSR) has been submitted under separate cover.

which, because no offense carried a life maximum, was determined to be 2,040 months (or 170 years).  The district court imposed a combined non-guideline sentence of 95 years' imprisonment and, though not intending LaPorte's release, lifetime supervised release.   A 248.

LaPorte filed a timely notice of appeal on January 12, 2018. A 254.

## Summary of the Argument

This appeal arises from Stacey LaPorte's conviction following a jury trial on child pornography offenses.  Prior to trial, LaPorte filed a motion to suppress an unrecorded statement attributed to him because it and any *Miranda* waiver were involuntary.  In support, he filed an affidavit claiming that (1) he consumed alcohol and marijuana prior to questioning, (2) an investigator promised leniency for his cooperation and threatened more charges if he asked for a lawyer and failed to cooperate, (3) he was handcuffed for two hours while an officer prepared a typed statement, and (4) he signed the statement, which he later alleged contained factual errors, unaware of its contents.   The government opposed the motion and filed certain documentary evidence in support of its claim that the statement was properly obtained after LaPorte knowingly and voluntarily waived his *Miranda* rights.  Even though the

10

questioning was not audio or video recorded, the district court simply adopted the government's version of the encounter and denied LaPorte's motion without a hearing.   Because the facts surrounding the police questioning were contested and LaPorte's version, if credited, would require the court to exclude the statement from trial, this Court should find that the district court abused its discretion in denying the motion without an evidentiary hearing.   Therefore, this Court should remand the case to the district court to conduct an evidentiary hearing and follow the procedures outlined in *United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998).

## Argument

### The district court erred in denying LaPorte's suppression motion without a hearing.

## I.   Standard of Review

This Court reviews a district court's "decision not to hold an evidentiary hearing for abuse of discretion." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001).

## II.   Legal Background

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V.  This privilege against self-incrimination and the right to Due Process, protected by the Fifth and Fourteenth Amendments, guarantees that a confession may only be admitted into evidence if it is voluntarily given by the defendant.  *See Dickerson v. United States*, 530 U.S. 428, 433-34 (2000).

The test for determining the voluntariness of a confession examines "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession."  *Id.* at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  *See also Rogers v. Richmond*, 365 U.S. 534, 544 (1961) (observing that the question to determine voluntariness is whether the conduct of law enforcement officers "was such as to overbear [the accused's] will to resist and bring about confession not freely self-determined.").  Ultimately, the voluntariness "determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'"

*Dickerson*, 530 U.S. at 434 (quoting *Stein v. New York*, 346 U.S. 156, 185 (1953)).

In making a voluntariness inquiry, courts assess "the totality of all the surrounding circumstances." *Id.* (quoting *Schneckloth*, 412 U.S. at 226). Broadly stated, courts consider "(1) the characteristics of the accused, (2) the conditions of interrogations, and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988). More particularly, these factors ordinarily include "the accused's age, his lack of education or low intelligence, the failure to give *Miranda* warnings, the length of detention, the nature of the interrogation, and any use of physical punishment." *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989).

Given the inherently coercive nature of police questioning, the government must provide so-called *Miranda* warnings before any statement obtained during custodial interrogations may be admitted at trial. As this Court has noted, "[i]t is well settled that before a suspect may properly be subjected to custodial interrogation, he must be informed that he has the right to remain silent, that any statement he makes may be used in evidence against him, and that he has the right to

have counsel present." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (citing *Miranda v. Arizona*, 384 U.S. 436, 467-71 (1966)). The failure to administer required *Miranda* warning creates an irrebuttable "'presumption of compulsion.'" *Id.* (quoting *Oregon v. Elstad*, 470 U.S. 298, 307 (1985)). Therefore, "'unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*.'" *Id.* (quoting *Elstad*, 470 U.S. at 307).

Moreover, statements obtained after a defendant has been provided *Miranda* warnings are inadmissible unless the government proves by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving the right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). Whether a defendant has validly waived his *Miranda* rights is assessed under the totality of the circumstances. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

Given the importance of admitting only voluntary statements at trial, the Supreme Court held in *Jackson v. Denno* that a defendant

14

objecting to the admission of a confession has a due process right "to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." 378 U.S. 368, 380 (1964). This hearing must be conducted outside the presence of the jury. *Id*. *See also* 18 U.S.C. § 3501(a).

The defendant's right to a hearing, however, is not absolute. As a general matter, an evidentiary hearing is required if "'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to [the challenged government action] are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (citations omitted). In the context of a defendant's motion to suppress statements, "[a]n assertion that *Miranda* warnings were not given, when the government asserts the contrary, thus creates a specific factual dispute" that "cannot properly be resolved without an evidentiary hearing." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998). The mere assertion that a statement was involuntary, however, "is not sufficient to require a hearing." *Id*. Accordingly, "a bald assertion that a statement was involuntary, for example, could be based on any of a number of factual premises such as coercion, lack of *Miranda* warnings,

15

or lack of competence. Without specification of the factual basis for such a characterization, the district court is not required to have a hearing." *Id.*

## III. Discussion

### A. LaPorte proffered facts and arguments that, if credited, would have precluded the government from introducing the statement at trial.

Prior to trial, LaPorte filed a timely motion to suppress statements the government claimed he made during custodial interrogation on May 17, 2016 as involuntarily obtained. A 38. In support of that motion, LaPorte submitted an affidavit in which he described being escorted to the police station, promised leniency for his cooperation, threatened with greater charges if he asked for a lawyer, questioned, and involuntarily made to sign a false statement created by the police. A 44. For example, LaPorte swore that prior to questioning, he had been drinking alcohol and smoking marijuana. A 44. After the police transported LaPorte to the station, he felt that he was not free to leave because he was placed in an interview room and an investigator was sitting "very close to [him] blocking the door." A 44. Before the investigator provided the required *Miranda* warnings, LaPorte was questioned, shown certain evidence, and

16

told that the police had all the evidence they needed to "put [him] away for life." A 44. The investigator assured LaPorte that if he cooperated, he would face "less charges." A 44. LaPorte was warned that if he asked for a lawyer, the investigator would make sure to bring a "s*** ton" more charges against him and be an "a******" if LaPorte refused to cooperate. A 44. After the investigator finally provided LaPorte's *Miranda* warnings, he handcuffed LaPorte to a chair, left the room for a few hours, and returned with a typed statement for LaPorte to sign. A 44-45. Without reading the statement or having it read to him, LaPorte signed the statement and realized only much later that it contained several false claims. A. 45.

If credited, LaPorte's account rendered the statement involuntary and inadmissible at trial. To begin with, LaPorte indicated that he had been consuming alcohol and marijuana prior to the interrogation. While intoxication does not render a statement *per se* involuntary, "[i]t is clear . . . that when 'a person is unconscious or drugged or otherwise lacks capacity for conscious choice,' a confession cannot be voluntary." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973). If, following a hearing, the district court found that LaPorte's alcohol and marijuana

consumption affected his capacity for conscious choice, the statement would have to be excluded from the trial. *See United States v. Taylor*, 745 F.3d 15, 25 (2d Cir. 2014) (concluding statement involuntary where "officer's persistent questioning took undue advantage of [the defendant's] diminished mental state, and ultimately overbore his will.").

Even if LaPorte's intoxicated state were not enough by itself, his statement would still be inadmissible if a court credited his claims concerning the investigator's threats and promises of leniency either by themselves or alongside his intoxicated state.  While this Court has held that, in general, promises of leniency will not *per se* render a confession involuntary, *see United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995), it is certainly "one factor to consider in determining whether the defendant's waiver was given voluntarily." *Id*.

Moreover, it has been noted that "[w]here . . . the police give the warnings but then suggest that the exercise of the right to consult with a lawyer would be prejudicial, denying the defendant all opportunities for leniency, that action not only will render involuntary the waiver of *Miranda* rights but also add a coercive element to the interrogation that could render the statement itself involuntary."  Wayne R. LaFave et al.,

18

2 Crim. Proc. § 6.2(c) (4th ed.) (November 2018 Update). Indeed, this Court held as much in *United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991), where an interrogating agent falsely made the defendant "choose between having an attorney present during questioning . . . or cooperating with the government." As in *Anderson*, LaPorte claimed he was told that if he asked for a lawyer, he would face a "sh** ton" more charges and lose any opportunity for leniency or cooperation. Therefore, if credited, this factor, considered either alone or along with LaPorte's intoxicated state and promises of leniency, would invalidate any claimed *Miranda* waiver and render the statement involuntary.

## B.    The district court abused its discretion in denying LaPorte's motion without a hearing.

Following a motion hearing on May 17, 2017, the district court entered a bench decision denying LaPorte's suppression motion without an evidentiary hearing for three reasons. None survives scrutiny.

First, the district court erred in concluding that LaPorte's claim about consuming alcohol and marijuana prior to the interrogation "does not render his statement inadmissible nor provide a sufficient basis on which to conduct an evidentiary hearing." A 135. The district court

reached this conclusion in light of LaPorte's asserted failure to provide a time frame for his alcohol and marijuana consumption or a claim that his consumption rendered him incapacitated during the questioning or that it in any way affected the voluntariness of the statement.  A 134.

It is true that LaPorte himself failed to indicate when he consumed alcohol and marijuana or how much of each substance he consumed.  It is equally true that LaPorte himself failed to expressly indicate that his consumption affected the voluntariness of his statement.  However, he submitted the affidavit in support of a motion to suppress the statement attributed to him, which he claims was involuntary.  Pursuant to Local Criminal Rule 12.1(e), LaPorte submitted an affidavit, "based upon personal knowledge, setting forth facts which, if proven true, would entitle the defendant to relief."  Whether LaPorte's consumption of alcohol and marijuana rendered him incapacitated so as to render the statement involuntary was a legal conclusion that the local rules general forbid parties from providing in affidavits.  *See* Local Civil Rule 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports.").  In any case, at the motion hearing, defense counsel

explained that "LaPorte contends he was [under the influence of drugs and alcohol] and that affected his ability to make a knowing, intelligent, and voluntary waiver." A 115. To what extent LaPorte's alcohol and marijuana consumption affected the voluntariness of his statement and any *Miranda* waiver was the proper subject of an evidentiary hearing.

That the government submitted an affidavit from the interrogating officer suggesting that LaPorte did not appear impaired only creates a factual question to be resolved following an evidentiary hearing. The government's affidavit did not allow the district court to simply credit the investigator's factual claims and conclude that "defendant never indicated he was under the influence of alcohol or drugs, never showed any objective signs of intoxication, and was able to communicate in a lucid manner." A 135. If it were otherwise, there would never be a need for an evidentiary hearing. A district court could simply credit the police officer's proffered assertions and deny a suppression hearing. The parties' factual dispute concerning the effect of LaPorte's alcohol and marijuana consumption raised a specific factual dispute that could only be resolved with an evidentiary hearing. *See Mathurin*, 148 F.3d at 68 (holding defendant's "assertion that *Miranda* warnings were not given,

21

when the government asserts the contrary, thus creates a specific factual dispute. That dispute cannot properly be resolved without an evidentiary hearing.").

Second, the district court erred in rejecting LaPorte's claim that he was questioned for twenty minutes prior to being provided any *Miranda* warnings. According to the district court, LaPorte's claim was contradicted by the investigator's affidavit and other documentary evidence proffered by the government. A. 135-136. Moreover, the district court concluded that LaPorte's claim was irrelevant because "defendant does not allege that he made any statements before being advised of his rights nor that he did not understand or did not waive his rights." A 136.

As before, LaPorte and the government presented differing accounts as to (a) when any *Miranda* warnings were provided, (b) whether LaPorte was improperly questioned prior to those warnings, and (c) whether any subsequent waiver was voluntary and knowing. Therefore, the district court was wrong in concluding that "the undisputed facts and evidence establish that there was simply no twenty-minute period of time where anything happened with the defendant before he was advised of his rights." A 136.

22

To the extent the motion was denied without an evidentiary hearing because LaPorte did not make any statements prior to being *Mirandized*, the district court misses the point. LaPorte claims not to have made *any* statement during the entire encounter, much less a voluntary one. Rather, he felt compelled to sign a statement created by the police. His claim about being questioned for twenty minutes prior to the *Miranda* warnings was proffered to show that any perceived waiver of his *Miranda* rights was not knowing and voluntary, especially because LaPorte claims that the officers threatened him with greater charges if he asked for a lawyer and failed to cooperate and promised leniency if he simply waived his rights and cooperated. *See Anderson*, 929 F.2d at 100.

Third, and finally, the district court held that LaPorte's "other allegations are irrelevant and/or patently false." A 136. It is not at all clear which "allegations" the district court was referring to here. However, immediately following this statement, the district court referenced only LaPorte's claim about being handcuffed alone in the interview room for hours and not reading the typed statement before signing it. A 136. According to the district court, LaPorte's account was "belied by the facts." A 136.

23

In dismissing LaPorte's claims, the district court, again, simply adopted the government's version of the unrecorded events, claiming that the entire encounter lasted two and a half hours, LaPorte sat next to the investigator while the statement was typed, the two discussed what LaPorte wanted the statement to say, LaPorte assured the investigator he could read, he again waived his *Miranda* rights by initialing next to each and agreeing to speak, and then freely signed the statement fully aware of its contents.  A 136-37.

LaPorte does not question that the district court accurately summarized the government's version of the interrogation, which it sought to support with certain documentary evidence.  However, simply because law enforcement officers proffer written notes from their interrogation that might contradict a defendant's account does not mean a district court is free to privilege the government's version of the events without an evidentiary hearing.  And it certainly does not convert the government's contested version into "facts" that can be accepted without an evidentiary hearing.

Matters might be otherwise had the officers made either an audio or video recording of the interrogation.   But the interrogating

investigator claimed he could not record the questioning because he was not trained on how to use the recording device and no other officer was at the station (A 152-53), despite his seventeen years of law enforcement experience (A 164), despite the fact that he claimed to have brought LaPorte to the station for questioning with another officer (A 86), and despite claiming to have been interrupted by that officer during the early stages of the interrogation (A 87).  In the absence of a full and reliable (or, in this case, any) recording of the encounter, the district court abused its discretion by relying on certain documentary evidence to conclude that LaPorte's account was "patently false" and not "credible."  A 136, 137.

What is ultimately important here is that LaPorte did not simply assert that his statement was involuntary.  *Cf. Mathurin*, 148 F.3d at 69 (noting "bald assertion" that statement was involuntary is not "sufficient to require a hearing.").  Instead, he provided a narrative account to explain why he signed a statement that was neither voluntary nor true. Moreover, the district court never concluded that all of LaPorte's claims about the interrogation, even if credited, were legally insufficient to render the statement attributed to him or any *Miranda* waiver unknowing and involuntary.  Instead, the district court, without hearing

and seeing a single witness testify, chose to adopt the government's version of the encounter and then made the surprising claim that "the undisputed facts show that defendant was properly Mirandized, waived his rights, and gave a voluntary statement." A 137. This was an abuse of discretion.

## C. This court should remand the case to the district court to conduct an evidentiary hearing.

When the district court fails to hold an evidentiary hearing to determine the voluntariness of a statement and the waiver of any *Miranda* warnings, the proper remedy is to leave the judgment in place and remand the case to the district court to conduct a hearing in the first place. This Court did just that in *United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998). In that case, the district court failed to conduct an evidentiary hearing even though the defendant alleged he was never provided his *Miranda* warnings. This Court remanded to the district court to conduct an evidentiary hearing and provided the following instructions:

> Following the evidentiary hearing, the district court should determine whether or not *Miranda* warnings were given. If the court determines that such warnings were given and that [the defendant] voluntarily waived his *Miranda* rights, the

26

court should deny the motion to suppress. If the district court
denies the motion to suppress, [the defendant] may file a new
notice of appeal from that decision. If the district court
determines that the government failed to prove that *Miranda*
warnings were given, it should suppress [the defendant's]
postarrest statements that resulted from custodial
interrogation. If the court suppresses those statements, finds
that their admission was not harmless, and orders a new trial,
that ruling would be subject to an immediate appeal by the
government pursuant to 18 U.S.C. § 3731 (1994); until the
resolution of such an appeal or until the government's time to
appeal has expired, the judgment of conviction shall remain
in place. In the event that the court grants the motion to
suppress but does not order a new trial, the present appeal
will be reinstated, without need for a new notice of appeal,
upon notice by either party to this Court by letter that the
district court has so ruled. The record on appeal shall be
supplemented with the record of the proceedings and rulings
on remand. Any such new or reinstated appeal shall be
referred to this panel.

*Mathurin*, 148 F.3d at 70 (internal citation omitted).

This Court has adopted a similar procedure in *United States v. Jelks*, 53
Fed.Appx. 601 (2d Cir. 2003) (remanding for additional fact-finding and
reconsideration as to whether consent to search was voluntary); *United
States v. Nelson*, 193 Fed.Appx. 47, 50, 50 n.4 (2d Cir. 2006) (remanding
for evidentiary hearing and directing district court to conduct harmless
error analysis if, after a hearing, the court suppressed evidence).

Therefore, this Court should remand to the district court to conduct

27

an evidentiary hearing. If the district court denies the suppression motion following a hearing, LaPorte should be permitted to file a new notice of appeal. If the court grants suppression, it should conduct a harmless error analysis and order a new trial if the admission of the challenged statements was not harmless (from which the government would be permitted to appeal) or decline to order a new trial if the statement's admission was harmless beyond a reasonable doubt (from which LaPorte would be permitted to renew the instant appeal). *Mathurin*, 148 F.3d at 70. *See also Chapman v. California*, 386 U.S. 18, 24 (1967) (holding government must show beyond a reasonable doubt that constitutional errors did not contribute to the verdict).

## Conclusion

Based on the foregoing reasons, this Court should remand the case to the district court to conduct an evidentiary hearing and follow the procedures outlined by this Court in *United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998).

December 4, 2018     Respectfully submitted,
Lisa A. Peebles

*/s/*
James P. Egan
Assistant Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

# Certificate of Compliance

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, counsel certifies that this brief complies with the type-volume limitations of Rule 32(a)(7), and contains 5,433 words, as counted by the word-processing system to prepare this document.

/s/
James P. Egan
Assistant Federal Public Defender

## Certificate of Service

I, Valarie Bruni, certify that today, December 4, 2018, one copy of the Appellant's Brief, was served upon Grant C. Jaquith, through Steven D. Clymer, Assistant United States Attorney, 100 South Clinton Street, Syracuse, New York 13261, by ECF with a paper copy to follow.

/s/
Valarie Bruni